## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC | § § § § | |
| **PLAINTIFFS** | § § | |
| v. | § § | Civil Action No. 2:13-cv-901 |
| ZTE CORPORATION, ZTE (USA) INC., and ZTE SOLUTIONS, INC. | § § § | |
| **DEFENDANTS.** | § § § | JURY TRIAL REQUESTED |

## PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S ORIGINAL COMPLAINT

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") file this Original Complaint for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

## PARTIES

1.     Plaintiff Rockstar Consortium US LP ("Rockstar") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.     Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

3.      Upon information and belief, Defendant ZTE Corporation is a corporation organized and existing under the laws of China with its principal place of business at ZTE Plaza, No. 55 Hi-Tech Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province 518057, China, P.R.C.

4.      Upon information and belief, Defendant ZTE (USA) Inc. is a corporation organized and existing under the laws of the State of New Jersey and maintains its principal place of business at 2425 N. Central Expy., Ste. 323, Richardson, TX 75080.

5.      Upon information and belief, Defendant ZTE Solutions, Inc. is a corporation organized and existing under the laws of the state of Delaware and maintains its principal place of business at 2425 N. Central Expy., Ste. 323, Richardson, TX 75080.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

7.      Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

8.      This Court has personal jurisdiction over Defendants ZTE Corporation, ZTE (USA) Inc., and ZTE Solutions, Inc. (collectively, "ZTE"). ZTE has conducted and does conduct business within the State of Texas.  ZTE, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United States, the State of Texas, and the Eastern District of Texas.   ZTE, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and

2

voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  ZTE has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## ASSERTED PATENTS

9.      On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

10.      On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony Wootton and William G. Colvin as the named inventors after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent.  MobileStar is the exclusive licensee under the '298 Patent.

11.      On December 25, 2001, U.S. Patent No. 6,333,973 ("the '973 Patent") entitled "Integrated Message Center" was duly and legally issued with Colin Donald Smith and Brian Finlay Beaton as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '973 Patent and possesses all rights of recovery under the '973 Patent.

3

12.     On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

13.     On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

14.     On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

## GENERAL ALLEGATIONS

15.     ZTE has directly and indirectly infringed and continues to directly and indirectly infringe the '937, '298, '973, '131, '591, and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere

4

in the United States, certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("ZTE Mobile Communication Devices").

16.     ZTE is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale ZTE Mobile Communication Devices, including but not limited to ZTE's family of smart phones, including but not limited to the ZTE Score and ZTE Flash, and ZTE's family of tablets, including but not limited to the ZTE Optik, ZTE's 4G Mobile Hotspot product, and other products that infringe the patent claims involved in this action or by transacting other business in this District.

**COUNT ONE**
**PATENT INFRINGEMENT BY ZTE**

17.     Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.  As described below, ZTE has infringed and/or continues to infringe the '937, '298, '973, '131, '591, and '572 Patents.

18.     At least ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  ZTE makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

19.     ZTE indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities

5

performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication Devices.  ZTE received actual notice of the '937 Patent at least by March 12, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

20.     ZTE's affirmative acts of selling ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals for ZTE Mobile Communication Devices induced ZTE's manufacturers and resellers to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '937 patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '937 patent; further, ZTE was aware that these normal and customary activities would infringe the '937 patent.  ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

21.     Accordingly, a reasonable inference is that ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because ZTE has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ZTE Communication Devices for resale to others, such as resellers and end-use customers. ZTE knew or should have known that such actions would induce actual infringement.

22.     The use of at least ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Gallery, Email, Maps and Browser functionality as intended by ZTE infringes at least method claim 1 of the '937 Patent.   ZTE uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

23.     In addition, ZTE provides at least ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

24.     ZTE indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik.  ZTE received actual notice of the '937 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

25.     ZTE provides at least ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '937 patent.

7

26.     ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States. For example, ZTE provides instructions to resellers and end-use customers regarding the use and operation of ZTE's products in an infringing way.  Such instructions include, for example, at least "ZTE Score User Manual" (available at http://www.zteusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_Manual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "ZTE Optik User Guide" (available at http://www.zteusa.com/media/wysiwyg//ZTE-Optik/ZTE_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October 30, 2013). When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.  ZTE knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent.  ZTE thus knows that its actions induce the infringement.

27.     ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

28.     ZTE indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik.  ZTE received actual notice of the '937 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

29.     ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real estate.  This navigable GUI is included in ZTE Mobile Communication Devices with an operating system configured and installed by ZTE to support at least the Gallery, Email, Maps, and Browser functionalities.  On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every ZTE Mobile Communication Device.

30.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, is especially made or especially adapted to operate on a ZTE Mobile Communication Device as a navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's ZTE Mobile Communication Devices.

31.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in ZTE Mobile Communication Devices is required for the operation of ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

32.     ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of ZTE Mobile

9

Communication Devices.  ZTE Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent. Because the sales and manufacture of ZTE Mobile Communication Devices with a navigable GUI infringes the '937 patent, ZTE's sales of its infringing products have no substantial non-infringing uses.

33.     Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices, including the ZTE Score and ZTE Optik, with distinct and separate components, including software components, which have no substantial non-infringing use.

34.     At least ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, infringe at least claims 27 and 31 of the '298 Patent.  ZTE makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

35.     ZTE indirectly infringes the '298 patent by inducing infringement by others, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication

Devices.  ZTE received actual notice of the '298 Patent at least by October 31, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

36.      ZTE's affirmative acts of selling ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals for ZTE Mobile Communication Devices induced ZTE's manufacturers and resellers to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '298 patent; further, ZTE was aware that these normal and customary activities would infringe the '298 patent.  ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

37.      Accordingly, a reasonable inference is that ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 patent in the United States because ZTE has knowledge of the '298 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ZTE Communication Devices for resale to others, such as resellers and end-use customers. ZTE knew or should have known that such actions would induce actual infringement.

38.      The use of at least ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, that support the Mobile Hotspot functionality as intended by

11

ZTE infringes at least method claims 14 and 24 of the '298 Patent.  ZTE uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

39.     In addition, ZTE provides at least ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, that support the Mobile Hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claims 14 and 24 of the '298 Patent.

40.     ZTE indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, in their intended use, including a customer's use of the Mobile Hotspot functionality.  ZTE received actual notice of the '298 Patent at least by October 31, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

41.     ZTE's affirmative acts of selling its ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, and providing instruction manuals induced the end-users of ZTE Mobile Communication Devices to use ZTE Mobile Communication Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality.  ZTE also provides instructions, including at least the 4g Mobile Hotspot Manual (available on ZTE's website at http://www.zteusa.com/media/wysiwyg/TMobile-4GMobileHotspot/T-Mobile_4G_Mobile_Hotspot_Start_Guide_English_-_PDF_-_461KB_.pdf) (accessed October 30, 2013) for using the Mobile Hotspot functionality.  Through its sales of ZTE

12

Mobile Communication Devices with Mobile Hotspot functionality, ZTE specifically intended the end-users of ZTE Mobile Communication Devices to infringe the '298 patent; further, ZTE was aware that the normal and customary use of Mobile Hotspot functionality would infringe the '298 patent.  ZTE also enticed its end-users to use the Mobile Hotspot functionality by providing instruction manuals and also providing Mobile Hotspot functionality.  ZTE performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

42.     Accordingly, a reasonable inference is that ZTE actively induces infringement of the '298 Patent by others, such as resellers and end-use customers.  ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because ZTE had knowledge of the '298 Patent, and ZTE actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ZTE Mobile Communication Devices in an infringing way.  Such instructions include at least (available on ZTE's website at http://www.zteusa.com/media/wysiwyg/TMobile-4GMobileHotspot/T-Mobile_4G_Mobile_Hotspot_Start_Guide_English_-_PDF_-_461KB_.pdf) (accessed October 30, 2013).  When resellers and end-use customers follow such instructions, they directly infringe the '298 Patent.  ZTE knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent.  ZTE thus knows that its actions induce the infringement.

13

43.     ZTE indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, in their intended use, including a customer's use of the Mobile Hotspot functionality.  ZTE received actual notice of the '298 Patent at least by October 31, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

44.     ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, with the Mobile Hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet.  The Mobile Hotspot functionality is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the Mobile Hotspot functionality available to ZTE Mobile Communication Devices.  Upon information and belief, the Mobile Hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

45.     A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is especially made or especially adapted to operate on a mobile communication device for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

46.     A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is not a staple article or commodity of commerce and that

14

the use of the Mobile Hotspot functionality of ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

47.     ZTE Mobile Communication Devices with Mobile Hotspot functionality, including the ZTE 4G Mobile Hotspot, are each a material part of the '298 patent and especially made for the infringing use of the Mobile Hotspot functionality for interfacing private and public data communication networks.  ZTE Mobile Communication Devices with the Mobile Hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Mobile Communication Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent.  Furthermore, ZTE provides user manuals describing the uses of ZTE Mobile Communication Devices that infringe the '298 patent.  Because the sales and manufacture of ZTE Mobile Communication Devices with Mobile Hotspot functionality infringes the '298 patent, ZTE's sales of its infringement products have no substantial non-infringing uses.

48.     Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to

15

others ZTE Mobile Communication Devices, including the ZTE 4G Mobile Hotspot, to support Mobile Hotspot functionality.   ZTE installs and configures ZTE Mobile Communication Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

49.     At least ZTE Mobile Communication Devices, including ZTE Score, with an operating system configured and installed by ZTE to support an integrated notification message center functionality infringe at least claims 1 and 21 of the '973 Patent.   ZTE makes, uses, sells, tests, uses, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes one or more claims of the '973 patent, including at least claims 1 and 21.

50.     ZTE indirectly infringes the '973 patent by inducing infringement by others, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication Devices.   ZTE received actual notice of the '973 Patent at least by March 12, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

51.     ZTE's affirmative acts of selling ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals for ZTE Mobile Communication Devices induced ZTE's manufacturers and resellers to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '973 patent.   Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '973 patent; further, ZTE was aware that these normal and

16

customary activities would infringe the '973 patent.  ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

52.     Accordingly, a reasonable inference is that ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 patent in the United States because ZTE has knowledge of the '973 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ZTE Communication Devices for resale to others, such as resellers and end-use customers. ZTE knew or should have known that such actions would induce actual infringement.

53.     The use of at least ZTE Mobile Communication Devices, including ZTE Score, with an operating system configured and installed by ZTE to support an integrated notification message center functionality as intended by ZTE infringes at least method claim 8 of the '973 Patent.  ZTE uses these devices within the United States and thus directly infringes one or more claims of the '973 patent, including at least claim 8.

54.     ZTE indirectly infringes the '973 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Score.  ZTE received actual notice of the '973 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

55.     ZTE provides at least ZTE Mobile Communication Devices, including ZTE Score, with an operating system configured and installed by ZTE to support integrated notification message center functionality to others, such as resellers and end-use customers, in the United States who, in turn, use ZTE Mobile Communication Devices to infringe at least method claim 8 of the '973 Patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '973 patent.

56.     ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 Patent in the United States. For example, ZTE provides instructions to resellers and end-use customers regarding the use and operation of ZTE Mobile Communication Devices, including ZTE Score, in an infringing way.  Such instructions include, for example, at least "ZTE Score User Manual"                                        (available                                        at http://www.zteusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_Man ual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013). When resellers and end-use customers follow such instructions, they directly infringe the '973 Patent.  ZTE knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '973 Patent.  ZTE thus knows that its actions induce the infringement.

57.     ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

18

58.     ZTE indirectly infringes the '973 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Score. ZTE received actual notice of the '973 Patent at least by March 12, 2012 in view of a communication in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

59.     ZTE Mobile Communication Devices, including ZTE Score, include functionality that, inter alia, displays an integrated notification message center contained in a single list. The notification message center is designed to provide a user with a single list of notifications regardless of the types of messages (e.g., email, text, etc) on the user's Mobile Communication Device. On information and belief, this functionality cannot operate in an acceptable manner absent the integrated notification message center, as it is included in every ZTE Mobile Communication Device.

60.     A reasonable inference to be drawn from the facts set forth is that the integrated message center in ZTE Mobile Communication Devices, including ZTE Score, is especially made or especially adapted to operate on a ZTE Mobile Communication Device as an integrated notification message center that provides a user with notifications concerning different types of messages on the user's Mobile Communication Device.

61.     A reasonable inference to be drawn from the facts set forth is that the integrated notification message center in the Mobile Communication Device, including ZTE Score, is not a staple article or commodity of commerce and that the use of the integrated notification message center in ZTE Mobile Communication Devices is

required for operation of ZTE Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

62.     ZTE Mobile Communication Devices, including ZTE Score, with the integrated notification message center are each a material part of the invention of the '973 patent and are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices.  ZTE Mobile Communication Devices, including the integrated notification message center, are especially made or adapted as an integrated notification message center that infringes the '973 patent.  Because the sales and manufacture of ZTE Mobile Communication Devices with an integrated notification message center infringes the '973 patent, ZTE's sales of its infringing products have no substantial non-infringing uses.

63.     Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices, including ZTE Score, with distinct and separate components, including software components, which have no substantial non-infringing use.

64.     At least ZTE Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support Message and Notification functionality infringe at least claim 1 of the '131 Patent.  ZTE makes, uses,

sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

65.     ZTE indirectly infringes the '131 patent by inducing infringement by others, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication Devices.  ZTE received actual notice of the '131 Patent at least by December 4, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

66.     ZTE's affirmative acts of selling ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals for ZTE Mobile Communication Devices induced ZTE's manufacturers and resellers to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '131 patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '973 patent; further, ZTE was aware that these normal and customary activities would infringe the '131 patent.  ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

67.     Accordingly, a reasonable inference is that ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 patent in the United States because ZTE has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by

using, selling, exporting, supplying and/or distributing within the United States, ZTE Communication Devices for resale to others, such as resellers and end-use customers.

68.     The use of at least ZTE Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support Message and Notification functionality as intended by ZTE infringes at least method claim 5 of the '131 Patent.  ZTE uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

69.     In addition, ZTE provides at least ZTE Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

70.     ZTE indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Flash, in their intended use, including a customer's use of the Message and Notifications functionality.   ZTE received actual notice of the '131 Patent at least by December 4, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

71.     ZTE's affirmative acts of selling ZTE Mobile Communication Devices, including ZTE Flash, and providing instruction manuals induced the end-users of ZTE Mobile Communication Devices, including ZTE Flash, to use ZTE Mobile

22

Communication Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality. ZTE also provides instructions, including at least the "Sprint Flash User Guide" (available at http://www.zteusa.com/media/wysiwyg//SprintFlash/Sprint_Flash_User_Guide_English_-_PDF_-_3.86MB_.pdf) (accessed October 30, 2013), for using the Messaging and Notifications functionality. Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, ZTE specifically intended the end-users of ZTE Mobile Communication Devices to infringe the '131 patent; further, ZTE was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent. ZTE also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals and also providing Messaging and Notifications functionality. ZTE performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

72. Accordingly, a reasonable inference is that ZTE actively induces infringement of the '131 Patent by others, such as resellers and end-use customers. ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because ZTE had knowledge of the '131 Patent, and ZTE actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ZTE Mobile Communication Devices, including ZTE Flash, in an infringing way. Such instructions include at least the "Sprint Flash User Guide" (available at

23

http://www.zteusa.com/media/wysiwyg//SprintFlash/Sprint_Flash_User_Guide_English_

-_PDF_-_3.86MB_.pdf) (accessed October 30, 2013).   When resellers and end-use

customers follow such instructions, they directly infringe the '131 Patent.   ZTE knows

that by providing such instructions, resellers and end-use customers follow those

instructions, and directly infringe the '131 Patent.   ZTE thus knows that its actions induce

the infringement.

73.     ZTE indirectly infringes the '131 Patent by contributing to infringement

by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c)

in this District and elsewhere in the United States.   Direct infringement is a result of

activities performed by the manufacturers, resellers, and end-users of ZTE Mobile

Communication Devices, including ZTE Flash, in their intended use, including a

customer's use of the Messaging and Notification functionality.   ZTE received actual

notice of the '131 Patent at least by December 4, 2012 in view of a communication from

Rockstar and/or its predecessors-in-interest to ZTE.

74.     ZTE's Message and Notification functionality receives and displays

message of different types, such as a phone call, voice mail, text message, or email.   The

Message and Notification Services functionality is designed to notify the user of an

incoming communication and to select the format of the message received and cannot

function in a manner that does not utilize the messaging functionality available to ZTE

Mobile Communication Devices, including ZTE Flash.   Upon information and belief, the

Message and Notifications functionality is designed to entice a user to receive

notifications of an incoming communication.

24

75.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to operate on ZTE Mobile Communication Devices, including ZTE Flash, for notifying a user of an incoming communication.

76.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the ZTE Mobile Communication Devices, including ZTE Flash, is for notifying a user of an incoming communication.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

77.     ZTE Mobile Communication Devices, including ZTE Flash, with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.   ZTE Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.   Furthermore, ZTE provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent.   Because the functionality provided by ZTE's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, ZTE's sales of its infringing products have no substantial non-infringing uses.

78.     Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination,

25

or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others, Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support Message and Notification functionality.  ZTE installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

79.     At least ZTE Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support VPN management functionality, infringe at least claims 1 and 8 of the '591 Patent.  ZTE makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

80.     The use of at least ZTE Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support VPN management functionality as specified and intended by ZTE infringes at least claims 1 and 8 of the '591 Patent.  ZTE uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

81.     ZTE indirectly infringes the '591 patent by inducing infringement by others, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ZTE Mobile Communication

26

Devices.  ZTE received actual notice of the '591 Patent at least by December 4, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to ZTE.

82.     ZTE's affirmative acts of selling ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals for ZTE Mobile Communication Devices induced ZTE's manufacturers and resellers to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '591 patent.  Through its manufacture and sales of ZTE Mobile Communication Devices, ZTE specifically intended its resellers and manufacturers to infringe the '591 patent; further, ZTE was aware that these normal and customary activities would infringe the '591 patent.  ZTE performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

83.     Accordingly, a reasonable inference is that ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because ZTE has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ZTE Communication Devices for resale to others, such as resellers and end-use customers.

84.     In addition, ZTE provides at least its Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support VPN management functionality to others, such as resellers and end-use

customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

85.     ZTE indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Flash, in their intended use, including a customer's use of the VPN management functionality.   ZTE received actual notice of the '591 Patent at least by December 4, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

86.     ZTE's affirmative acts of selling its Mobile Communication Devices, including ZTE Flash, and providing instruction manuals induced the end-users of ZTE Mobile Communication Devices, including ZTE Flash, to use ZTE Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality.   ZTE also provides instructions, including at least "Sprint Flash User Guide" (available at http://www.zteusa.com/media/wysiwyg//SprintFlash/Sprint_Flash_User_Guide_English_ -_PDF_-_3.86MB_.pdf) (accessed October 30, 2013), for using the VPN management functionality.   Through its sales of ZTE Mobile Communication Devices with VPN management functionality, ZTE specifically intended the end-users of ZTE Mobile Communication Devices to infringe the '591 patent; further, ZTE was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.   ZTE also enticed its end-users to use the VPN management functionality by

28

providing instruction manuals and also providing VPN management functionality.  ZTE performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

87.    Accordingly, it is a reasonable inference that ZTE actively induces infringement of the '591 Patent by others, such as resellers and end-use customers.  ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because ZTE had knowledge of the '591 Patent, and ZTE actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ZTE's products, including ZTE Flash, in an infringing way.  Such instructions include at least "Sprint Flash User Guide" (available at http://www.zteusa.com/media/wysiwyg//SprintFlash/Sprint_Flash_User_Guide_English_-_PDF_-_3.86MB_.pdf) (accessed October 30, 2013).  When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent.  ZTE knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent.  ZTE thus knows that its actions induce the infringement.

88.    ZTE indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Flash, in their intended use, including a

customer's use of the VPN management functionality.  ZTE received actual notice of the '591 Patent at least by December 4, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

89.     ZTE's VPN management functionality facilitates management of VPNs. The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to ZTE Mobile Communication Devices, including ZTE Flash.  The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

90.     A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on ZTE Mobile Communication Devices, including ZTE Flash, for providing VPN management functionality.

91.     A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of ZTE Mobile Communication Devices, including ZTE Flash, is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

92.     ZTE Mobile Communication Devices, including ZTE Flash, with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality to receive call trace information.  ZTE Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.

30

Furthermore, ZTE provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent.  Because the functionality provided by ZTE's VPN management functionality infringes the '591 patent, ZTE's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

93.     Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others, Mobile Communication Devices, including ZTE Flash, with an operating system configured and installed by ZTE to support VPN management functionality.  ZTE installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

94.     The use of at least ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Location Services functionality, as intended by ZTE infringes at least method claim 17 of the '572 Patent.  ZTE uses these Mobile Communication Devices and thus directly infringes at least method claim 17 of the '572 Patent.

95.     In addition, ZTE provides at least its Mobile Communication Devices, including ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Location Services functionality to others, such as resellers and end-use

31

customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

96.    ZTE indirectly infringes by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, in their intended use, including a customer's use of the Location Services functionality.  ZTE received actual notice of the '572 Patent at least by May 11, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

97.    ZTE's affirmative acts of selling its Mobile Communication Devices, including ZTE Score and ZTE Optik, and providing instruction manuals induced the end-users of ZTE Mobile Communication Devices to use ZTE Mobile Communication Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality.  ZTE also provides instructions, including at least "ZTE          Score          User          Manual"          (available          at http://www.zteusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_Man ual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "ZTE Optik User Guide"          (available          at          http://www.zteusa.com/media/wysiwyg//ZTE-Optik/ZTE_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October 30, 2013), for using the Location Services functionality.  Through its sales of ZTE Mobile Communication Devices with Location Services functionality, ZTE specifically intended the end-users of ZTE Mobile Communication Devices to infringe the '572 patent; further,

ZTE was aware that the normal and customary use of Location Services would infringe the '572 patent. ZTE also enticed its end-users to use the Location Services by providing instruction manuals and also providing Location Services functionality. ZTE performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

98.     Accordingly, a reasonable inference is that ZTE actively induces infringement of the '572 Patent by others, such as resellers and end-use customers. ZTE specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because ZTE had knowledge of the '572 Patent, and ZTE actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ZTE's products, including ZTE Score and ZTE Optik, in an infringing way. Such instructions include at least "ZTE Score User Manual" (available at http://www.zteusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_Man ual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "ZTE Optik User Guide" (available at http://www.zteusa.com/media/wysiwyg//ZTE-Optik/ZTE_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October 30, 2013) "ZTE Score User Manual" (available at http://www.zteusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_Man ual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "ZTE Optik User Guide" (available at http://www.zteusa.com/media/wysiwyg//ZTE-Optik/ZTE_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October 30,

2013).   When resellers and end-use customers follow such instructions, they directly infringe the '572 Patent.   ZTE knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '572 Patent.   ZTE thus knows that its actions induce the infringement.

99.     ZTE indirectly infringes the '572 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.   Direct infringement is a result of activities performed by the manufacturers, resellers, and end-users of ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, in their intended use, including a customer's use of the Locations Services functionality.   ZTE received actual notice of the '572 Patent at least by May 11, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to ZTE.

100.    ZTE's Location Services functionality provides call trace information, i.e., a geographic location of ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik.   The Location Services functionality is designed to notify the user of ZTE Mobile Communication Devices of call trace information, i.e., a geographic location of the Mobile Communication Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Mobile Communication Devices.   Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

101.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, for

34

obtaining call trace information, i.e., a geographic location of the Mobile Communication Devices.

102.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, is for providing call trace information.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

103.    ZTE Mobile Communication Devices, including ZTE Score and ZTE Optik, with Location Services functionality are each a material part of the '572 patent and especially made for the infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Mobile Communication Devices. The Mobile Communication Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent.  Furthermore, ZTE provides user manuals describing the uses of its products that infringe the '572 patent.  Because the functionality provided by ZTE's Location Services to obtain call trace information, i.e., a geographic location of the Mobile Communication Devices, infringes the '572 patent, ZTE's sales of its infringing products have no substantial non-infringing uses.

104.    Accordingly, a reasonable inference is that ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or

35

especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others, Mobile Communication Devices, including ZTE Score and ZTE Optik, with an operating system configured and installed by ZTE to support Location Services functionality.  ZTE installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

105.   ZTE's acts of infringement have caused damage to Rockstar and MobileStar.  Rockstar and MobileStar are entitled to recover from ZTE the damages sustained by Rockstar and MobileStar as a result of ZTE's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of ZTE have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

106.   ZTE received actual notice of its infringement of the '937, '298, '973, '131, '591, and '572 Patents through at least letters sent by Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd. and/or Nortel Networks, Inc., to ZTE, and through meetings between employees of Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd., or Nortel Networks Inc. and ZTE.  ZTE also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

107.   ZTE has willfully infringed and/or does willfully infringe the '937, '298, '973, '131, '591, and '572 Patents.

## DEMAND FOR JURY TRIAL

Rockstar and MobileStar hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rockstar and MobileStar pray for the following relief:

1.      A judgment that ZTE has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

2.      A judgment that ZTE has directly infringed the '298 Patent, contributorily infringed the '298 Patent, and/or induced the infringement of the '298 Patent.

3.      A judgment that ZTE has directly infringed the '973 Patent, contributorily infringed the '973 Patent, and/or induced the infringement of the '973 Patent.

4.      A judgment that ZTE has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

5.      A judgment that ZTE has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

6.      A judgment that ZTE has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent.

7.      A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '937 patent;

8.      A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and

37

those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '298 patent;

9.      A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '973 patent;

10.     A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '131 patent;

11.     A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '591 patent;

12.     A permanent injunction preventing ZTE and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '572 patent;

13.     A judgment that ZTE's infringement of the '937, '298, '973, '131, '591, and '572 Patents has been willful;

14.     A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to its attorneys' fees incurred in prosecuting this action;

15.     A judgment and order requiring ZTE to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

16.     A judgment and order requiring ZTE to pay Rockstar and MobileStar the costs of this action (including all disbursements);

17.     A judgment and order requiring ZTE to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

18.     A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee; and

19.     Such other and further relief as the Court may deem just and proper.

DATED:  October 31, 2013.

Respectfully submitted,
**McKool Smith, P.C.**

*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
**MCKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US,
LP AND MOBILESTAR
TECHNOLOGIES LLC**